UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| ANTHONY W. BELEW, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 11-107-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Anthony W. Belew ("Belew" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). [Record Nos. 7, 8] Belew argues that the administrative law judge ("ALJ") made a number of errors in reaching his conclusion that he is not disabled. He seeks reversal of the ALJ's decision and an award of benefits. However, the Commissioner contends that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by the Claimant.

**I.**

On July 21, 2008, Belew applied for a period of disability and disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income under Title

XVI of the Act.[1]  [Tr., p. 75]  He alleged a disability beginning December 5, 2007.  [*Id.*]  The applications were denied initially and upon reconsideration.  [Tr., p. 13]  Belew, along with his attorney Michael Monce, and vocational expert ("VE") Janet Chapman, appeared before ALJ Paul Yerian on July 14, 2010.  [Tr., p. 388]  In a hearing decision dated September 29, 2010, ALJ Yerian found that Belew was not disabled under sections 216(i) and 223(d) of the Social Security Act and was not entitled to a period of disability or disability insurance benefits.  [Tr., p. 26]  The ALJ also found that Belew was not entitled to Supplemental Security Income because he was not disabled under section 1614(a)(3)(A) of the Act.  [Tr., p. 27]

Belew was forty-five years old at the time of the administrative hearing.  [Tr., p. 393]  He has a General Education Diploma ("GED") and work experience as a concrete finisher.  [Tr., pp. 112, 115]  His alleged disability stems from a crack in his pelvic bone, lumbar problems, asthma, chronic obstructive pulmonary disease ("COPD"), and depression.  [Tr., pp. 111, 396-99]  After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Belew suffered from a combination of severe impairments, including hypertension without end-organ changes, asthma, COPD, degenerative disc disease of the lumbar and cervical spines, and status post-hernia repair.  [Tr., p. 16]  Notwithstanding these impairments, ALJ Yerian found that Belew retained the residual functional capacity ("RFC") to perform sedentary work, "except that [he] can frequently balance, kneel, and climb stairs, and occasionally stoop, crouch, crawl, and climb ladders, ropes or scaffolds.  He needs a relatively clean air environment.  He must avoid concentrated exposure to vibration, and no frequent exposure to hazardous dangerous

---

1    Belew applied previously for disability insurance benefits and Supplemental Security Income on October 28, 2004.  [Tr., p. 13]  The ALJ denied benefits on December 4, 2007.  [*Id.*]

machinery." [Tr., p. 18]  As a result of the ALJ's assessment, Belew was denied a period of disability, disability insurance benefits, and Supplemental Security Income.  [Tr., pp. 26-27]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether

-3-

he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 784 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir.

2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).   Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence.   42 U.S.C. § 405(g).

## III.

### A.     Weight of Evidence

Belew makes three arguments regarding the weight given to various medical source opinions.   He asserts that the ALJ erred when he: (1) discounted the opinion of Dr. Kelly, the treating specialist; (2) failed to give "good reasons" for discounting the findings of disability from Dr. Kelly; and (3) failed to explain his reasons for giving greater weight to Dr. Gilman. Because Belew had filed a previous claim, the ALJ was "specifically bound by the findings from the prior decision relating to issues arising under step 4 of the sequential evaluation absent new and material evidence or evidence of a changed condition."   [Tr., p. 14 (citing AR 98-3(6))] "Social security claimants are bound by the principles of res judicata."   *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997).   And an "initial determination is binding unless the claimant requests reconsideration or the Commissioner revises its decision."   *Id.*   Therefore, Belew was required to prove "changed circumstances" in order to prevail on the issue of his RFC.   *Id.* at 842.

A claimant's RFC — what tasks he or she can or cannot perform — is an issue reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly

reserved for the Commissioner."). The determination regarding what, if any, jobs the claimant can perform is also reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ need not "give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The ALJ who decided Belew's prior claim concluded that Belew could perform "light work with the following exceptions: the claimant can frequently balance, kneel, and climb ramps ans stairs; occasionally stoop, crouch, crawl, and climb ladders, ropes or scaffolds; and must avoid concentrated exposure to vibration; and needs a relatively clean air environment." [Tr., p. 24] ALJ Yerian found that "new and material evidence warrants a departure from the residual functional capacity established in the prior Administrative Law Judge['s] unfavorable decision." [Tr., p. 24] Therefore, the ALJ departed from the findings in the prior decision when he found an RFC for sedentary work. He based this new finding on "imaging studies [that] have shown some progression in severity." [Tr., p. 21] However, he found that the clinical findings "showed no significant deterioration or increase in paid compared to previous records," and he afforded little credibility to Belew's testimony concerning his subjective complaints. [*Id.*; *see* Tr., pp. 21-23] Moreover, he discounted the opinions of Dr. Kelly and Dr. Shih (an examining source) regarding the severity of Belew's pain and functional restrictions. He explained that "the record fails to support either opinion in totality." [Tr., p. 24]

### 1.   Dr. Kelly

Belew argues that ALJ Yerian failed to give controlling weight to Dr. Kelly, the treating specialist. He asserts that Dr. Kelly's opinion was entitled to more than the "little weight"

accorded by the ALJ.  [Record No. 7, p. 9]  Additionally, Belew contends that the ALJ failed to give "good reasons" for rejecting Dr. Kelly's findings of disability.  [*Id.*, p. 10]   The Commissioner counters that "the ALJ properly gave little weight to Dr. Kelly's assessment because it was inconsistent with his own treatment notes and . . . appeared to be based on [Belew's] subjective complaints."  [Record No. 8, p. 4]   Further, he asserts, ALJ Yerian "discussed Dr. Kelly's opinion at length and provided ample reasons for not giving this opinion controlling weight."  [*Id.*, p. 6]

A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").   Moreover, the regulations provide that a physician's opinion as to whether a claimant is disabled or unable to work will be given no "special significance."  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for his decision.  *Rogers*, 486 F.3d at 242.  This is a "clear elaboration requirement imposed explicitly by the regulations."  *Bowie v. Comm'r of Soc. Sec.*,

539 F.3d 395, 400 (6th Cir. 2008).  The dual purpose of this requirement is to help claimants

understand the disposition of their cases and "ensure that the ALJ applies the treating physician

rule and permits meaningful review of the ALJ's application of the rule."  *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004) (citations omitted).  Failure to abide by this

requirement can result in the matter being remanded.  *Id.* at 545; *see also Halloran v. Barnhart*,

362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not

provided 'good reasons' for the weight given to a treating physician[']s opinion.").

Dr. Kelly submitted a "Physical Residual Functional Capacity Questionnaire," in which

he opined that Belew was "[i]ncapable of even 'low stress' jobs."  [Tr., p. 280]  ALJ Yerian

determined that this opinion was "not supported by or consistent with the objective clinical and

laboratory findings and [is] contrary to the claimant's description of his activities of daily living

and mental capacity."  [Tr., p. 24]  The ALJ discounted Dr. Kelly's functional assessment of

Belew because his clinical findings did not support the significant restrictions indicated in the

questionnaire; instead, the medical records "showed no significant weakness, no indication of

sensory or reflex deficits, no bowel or bladder problems, no significant worsening of his

musculoskeletal condition, and tremendous improvement of sever pain with sacroiliac

injections."  [Tr., p. 24]  Moreover, he found that "the course of treatment pursued by Dr. Kelly

has not been consistent with what one would expect if the claimant were truly disabled."  [Tr.,

p. 25]

ALJ Yerian also found that Dr. Kelly's opinion was inconsistent with the opinion of Dr.

Shih, an examining doctor.  He compared the two opinions at length:

Dr. Shih completed a form wherein she indicated that the claimant could occasionally twist, a movement known specifically to exacerbate sacroiliitis. By contrast, Dr. Kelly opined in a residual functional capacity assessment completed on June 15, 2010, at the request of counsel that the claimant is never to twist. Dr. Shih further opined that the claimant could lift 10 pounds occasionally, which is in complete contrast to Dr. Kelly who opined that the claimant could rarely lift even 10 pounds. Dr. Shih then opined that the claimant would not require a change in position or unscheduled break whereas Dr. Kelly opined that the claimant would need to shift his positions at will from sitting, standing or walking and he would need an unscheduled 10-minute break every hour. In addition, Dr. Shih opined that the claimant could sit at least six hours and Dr. Kelly limited the claimant's ability to sit to two hours in an eight-hour workday. Both doctors opined the claimant would be limited to stand/walk less than two hours in an eight-hour workday. Dr. Shih who noted treatment for depression, hypertension, chronic obstructive pulmonary disease, and ruptured Achilles tendon . . . opined that the claimant's symptoms would frequently interfere with his attention and concentration needed to perform even simple work tasks while Dr. Kelly indicated constantly. On the other hand, the claimant stated at the hearing that he did not have any problem with his attention and concentration.

[Tr., p. 23 (internal citations omitted)]

The ALJ did not err in refusing to give controlling weight to Dr. Kelly's opinion. Belew asserts that ALJ Yerian "is not a doctor and thus erred . . . in claiming a lack of medical findings to support the limitations on working set out by Dr. Kelly." [Record No. 7, p. 9] This argument is without merit. The ALJ did not "play doctor" by evaluating the medical evidence because he is required to do so under the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c). Furthermore, as explained above, the RFC is a determination reserved to the Commissioner. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, when the treating physician "offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341

(6th Cir. 2008).  ALJ Yerian did not err in discounting Dr. Kelly's opinion concerning Belew's RFC.

The ALJ also gave good reasons for the decision not to accord controlling weight to Dr. Kelly's evaluation.  As described above, ALJ Yerian's discussion of Dr. Kelly's opinion consisted of a much more detailed analysis than simply a "summary dismissal."  *Wilson*, 378 F.3d at 545.  Rather, the ALJ engaged in a detailed analysis of Dr. Kelly's opinion, and properly concluded that it was "not supported [by] substantial objective clinical and laboratory findings." [Tr., p. 25]  Therefore, ALJ Yerian sufficiently explained his reasons for not affording Dr. Kelly's assessment of Belew's RFC controlling weight.  *See White*, 572 F.3d at 286 (finding sufficient rationale for discounting treating physician's assessment of claimant's ability to work where ALJ gave "three basic reasons").

Belew also argues that the ALJ erred when he assigned "little weight" to Dr. Kelly's opinion.  [Record No. 7, p. 9]  If a treating source's opinion is not entitled to controlling weight, the ALJ must consider several factors in determining what weight to give it.  These include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must explain his reasons for the weight he gives a treating-source opinion.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, at *11-12 (July 2, 1996).

-10-

The ALJ gave sufficient reasons for assigning little weight to the RFC opinion of Dr. Kelly.  Belew contends that the length of the treatment relationship with Dr. Kelly, as well as Dr. Kelly's specialization as a neurologist, should entitle the opinion to the "most weight." [Record No. 7, p. 9]  However, the reasons that ALJ Yerian gave for refusing to give controlling weight to Dr. Kelly's opinion also support his determination not to accord it with the most weight.  In considering Dr. Kelly's opinion, the ALJ thoroughly reviewed the record and medical evidence before him and concluded that the opinion was entitled to little weight due to the contradictory evidence in the record.  The ALJ's decision is explained at length in his opinion and the reasoning is sound.

### 2.   Dr. Gilman

Belew objects to the ALJ's reliance on Dr. Gilman's opinion in his analysis of Belew's RFC.[2]  He contends that the ALJ erred in according greater weight to the "residual functional capacity of State agency medical consultant, Dr. Gilman, who concluded that a sedentary residual functional capacity was appropriate as of the claimant's alleged disability-onset date." [Tr., p. 24]  Belew asserts that because "Dr. Gilman is a non-examining doctor who reviewed only (part of) the file in March[] 2009," his opinion should be given less weight than those of Drs. Kelly and Shih.  [Record No. 7, p. 6]

---

2     Dr. Gilman is a State agency medical consultant, who submitted a Physical Residual Functional Capacity Assessment on March 11, 2009.  [Tr., pp. 266-73]  As the Commissioner points out, "State agency medical consultants are considered highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act."  [Record No. 8, p. 7 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f))]

-11-

As a general rule, the ALJ gives "more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However, the ALJ may credit the opinion of a non-examining doctor more than that of an examining doctor as long as he considers the relevant factors in making that determination. Indeed, the Sixth Circuit has affirmed an ALJ's decision to afford more weight to opinion of non-examining source over the examining doctor where the latter's "conclusion was not fully supported by her own materials or the record as a whole." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Here, ALJ Yerian gave "very little weight" to the opinions of Drs. Kelly and Shih because they were inconsistent with the clinical findings in the record as well as Dr. Kelly's own treatment of Belew. [Tr., p. 24] The decision to accord Dr. Gilman's opinion with greater weight than those of Drs. Kelly and Shih, therefore, is supported by substantial evidence. *See Ealy*, 594 F.3d at 515.

Additionally, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). As long as Dr. Gilman's opinion is supported by evidence from the case record, the ALJ may accord it greater weight than the discounted opinion of Dr. Kelly. *See id.* Belew asserts that the "ALJ must acknowledge the evidence submitted after [Dr. Gilman's] paper review and discuss [it]." [Record No. 7, p. 7] Belew cites *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir. 2009), in support of his contention that ALJ Yerian erred when he failed to discuss the evidence submitted after Dr. Gilman's review of Belew's medical records. However, this action is distinguishable from

-12-

*Blakley*.  The court in *Blakley* found that the ALJ erred when it relied on non-examining source opinions which predated "over 300 pages of medical evidence [that] reflects ongoing treatment and notes by Blakley's treating sources."  *Id.* at 409.  The Court found that the ALJ's weighing of the evidence was incomplete because there was no "indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record."  *Id.* (internal quotation marks omitted).  Here, however, ALJ Yerian did not fail to "recognize[] and evaluate[] the treating relationship[]" of Dr. Kelly.  *Id.*  In fact, he discussed the relationship at length.  [*See* Tr., pp. 23-25]  The ALJ did not need to specifically discuss the evidence that was not reviewed by Dr. Gilman in order to rely on his assessment, as long as he considered the Dr. Kelly's opinion and "provided 'good reasons' for discounting it."  *Helm*, 405 F. App'x at 1002.  ALJ Yerian did not err in affording greater weight to the opinion of Dr. Gilman.

### B.    Credibility

Belew also argues that the ALJ erred in his credibility assessment.  [Record No. 7, p. 12] He asserts that the credibility determination was "erroneous as a matter of law and [is] not supported by substantial evidence."  [Record No. 7, p. 13]  Belew maintains that the objective medical evidence from the record supports his subjective complaints of pain, and thus asserts that the ALJ's findings should be reversed.

The ALJ is in a unique position to "observe the claimant and judge [his] subjective complaints."  *Buxton*, 246 F.3d at 773.  In fact, an ALJ is "charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th

Cir. 1997).  As a result, an ALJ's credibility determinations are "entitled to deference on judicial review."  *Boyett v. Apfel*, 8 F. App'x 429, 434 (6th Cir. 2001).  However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so."  *Felisky v. Brown*, 35 F.3d 1027, 1036 (6th Cir. 1994).

ALJ Yerian's conclusions about Belew's subjective complaints were not unreasonable or outside the scope of his authority.  The credibility assessment was thorough and well-reasoned.  Furthermore, it was based on more than his own observations about Belew's reliability.  [*See* Tr., p. 21 ("I find the claimant's description of the severity of his pain has been so extreme as to appear implausible.")]  In fact, the majority of the ALJ's opinion concerned the discrepancies between Belew's claims and the weight of the medical evidence.  For instance, the ALJ found that Belew had "exaggerated his subjective complaints" because "imaging studies have shown some progression in severity, . . . but not of the severity to preclude work."  [Tr., p. 21]  Therefore, because ALJ Yerian's decision to afford less weight to Belew's testimony regarding his disability was supported by more evidence than merely his own observations of his behavior at the hearing, his conclusion is not erroneous.

Belew makes several specific arguments that the ALJ erred in evaluating the evidence regarding Belew's subjective complaints of pain, all of which are without merit.[3]  Belew asserts that "[t]he fact that there is not a disc herniation is not a valid ground to discount the subjective

---

3       For instance, he contends that the ALJ erred when he failed to "evaluate the 'precipitating and aggravating factors' for the pain under 404.1529" [Record No. 7, p. 13]; however, ALJ Yerian specifically noted that he considered "other factors in assessing the claimant's complaints of pain and other symptoms, and how those factors affect [his] ability to work, . . . [including] precipitating and aggravating factors."  [Tr., p. 20 (citing 20 C.F.R. § 404.1529)]

complaints, as disabling back and leg pain can come from other sources." [Record No. 7, p. 12 (internal citation omitted)]  Although that is certainly true, it was not improper for the ALJ to consider the absence of any "disc herniation or similar pathology," especially because he did so in the context of evaluating the record as a whole to conclude that "the evidence fails to document that the claimant has demonstrated most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor." [Tr., p. 21]  Belew also maintains that the ALJ erred when he failed to note that "Dr. Kelly and Shih specifically stated that Mr. Belew was not a malingerer and that the impairments were reasonably consistent with the symptoms and functional limitations." [Record No. 7, p. 13]  However, the ALJ "is not bound by conclusory statements of doctors," and therefore had no reason to mention these statements in his opinion.  *Buxton*, 246 F.3d at 773.

The entirety of Belew's argument on this issue is little more than a thinly-veiled request for this Court to re-weigh the evidence, which it does not have the authority to do.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.").  ALJ Yerian's credibility decision was based on inferences drawn from the record, which were supported by substantial evidence.  The "findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772.  Therefore, the Court will not disturb ALJ Yerian's credibility determination.

### C.     VE Testimony

-15-

Finally, Belew argues that the Commissioner failed to meet his burden of establishing that there are a significant number of jobs in the national economy that Belew can perform. He asserts that the ALJ asked the VE "improper hypothetical questions." [Record No. 7, p. 14] Belew maintains that the ALJ should have included "the need to alternate between sitting and standing to work 40 hours a week" and the "use of the cane while standing at least two hours on a job."[4] [*Id.*] He also contends that the three jobs listed by the VE are "outdated in the Dictionary of Occupational Titles." [*Id.*] Because the Occupational Information Network ("O*NET") lists the first two jobs as semi-skilled jobs with SVP levels of 4, Belew argues that the ALJ erred when he concluded that there were jobs that exist in significant numbers in the national economy that Belew can perform.

ALJ Yerian found "the presence of at least 1000 jobs in the local economy and about 180,000 jobs nationally" and therefore concluded that Belew is "capable of making a successful adjustment to other work that exists in significant numbers in the economy." [Tr., p. 26] At the hearing, the ALJ presented a hypothetical to the VE that included all the limitations he found supported by the record. [Tr., pp. 419-20] The VE testified that Belew's RFC was "consistent with nearly the full range of sedentary and unskilled work." [Tr., p. 420] She listed three jobs — clerical support occupations, surveillance systems monitor, and assembly work — as examples of work that Belew could perform with his limitations. [*Id.*]

---

4    ALJ Yerian did in fact ask the VE hypothetical questions based on these limitations. [*See, e.g.*, Tr., p. 421 ("If I added an additional limitation on that that the individual was required to use a hand[-]held ambulatory device, would that change your testimony?")] He did not, however, rely on the VE's answers to those questions because he did not adopt Belew's suggested limitations in the final RFC determination.

ALJ Yerian's reliance on the VE's response to his hypothetical question was not erroneous because it was consistent with Belew's RFC and vocational profile. "If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints." *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The Court has already concluded that the ALJ's RFC determination applied the proper legal standard and was supported by sufficient evidence. And ALJ Yerian did not determine that Belew needed to alternate between sitting and standing or required the use of a cane. [*See* Tr., p. 18] Therefore, the VE's testimony about jobs that would be available had the ALJ posed a question about a *different* RFC — one that included such limitations — is not relevant. *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001) (finding that ALJ did not err in "declining to include limitations" in hypothetical question to VE that were "neither explained nor supported by medical or clinical findings"). An ALJ is not bound to discuss or adopt testimony based on imaginary RFCs. ALJ Yerian thus did not err in relying on the VE's answer to a hypothetical question that was consistent with his RFC assessment.

Moreover, the ALJ did not err in concluding that "jobs exist in significant numbers in the national economy that [Belew] can perform." [Tr., p. 25] As an initial matter, the regulations list the Dictionary of Occupational Titles ("DOT") as a relevant government publication from which the ALJ can take administrative notice of job information; O*NET is not included on this list. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). However, due to the age of the DOT, the Sixth Circuit recently found that "common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted." *Cunningham v. Astrue*, 360 F. App'x

-17-

606, 615 (6th Cir. 2010).[5]  The court held that the "VE's dependence on the DOT listings alone does not warrant a presumption of reliability," and it remanded the case for consideration of whether the DOT listings — including the description for surveillance systems monitor — were "reliable in light of the economy as it existed at the time of the hearing before the ALJ."  *Id.* at 616.

Here, the VE's testimony is not undermined by the fact that she did not rely on the job descriptions in O*NET.  "Whether remand is appropriate in this instance boils down to whether substantial evidence supports the ALJ's conclusion that given [the claimant's] age, education, work experience, and RFC, there are jobs in significant numbers in the national economy that []he can perform."  *Earls v. Comm'r of Soc. Sec.*, No. 1:09 CV 01465, 2011 U.S. Dist. LEXIS 92882, at *19 (N.D. Ohio, Aug. 19, 2011).  The VE testified that the hypothetical RFC and limitations were "consistent with nearly the full range of sedentary and unskilled work."  [Tr., p. 420]  The fact that one or even two of the listed examples of sedentary unskilled work may be outdated does not make it unreasonable for the ALJ to rely on the VE's conclusion that Belew is capable of performing "pretty much a full range of sedentary unskilled work."[6]  [*Id.*] Regardless of the examples she gave, the VE indicated that a person with Belew's RFC and

---

5        *Cunningham* is an unpublished decision by a divided panel.  No subsequent Sixth Circuit opinion has questioned the reliability of VE testimony on the grounds of his or her reliance on the DOT.  *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 851 (6th Cir. 2010); *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010).

6        Moreover, as the Commissioner points out, Belew "has not come forward with evidence showing that the duties of the other jobs identified by the VE . . . have changed significantly since the DOT was published."  [Record No. 8, p. 11]  Therefore, even assuming that all the surveillance systems monitor jobs were eliminated, the remaining examples given by the VE would support the ALJ's findings.  *Cf. Hayes v. Comm'r of Soc. Sec.*, No. 1:09-cv-1107, 2011 U.S. Dist. LEXIS 71723, at *36 (W.D. Mich. June 15, 2011).

limitations is qualified for almost all sedentary and unskilled work opportunities. This testimony provides substantial evidence to support ALJ Yerian's finding that there are a significant number of jobs that Belew is capable of performing.

## IV.

Although Belew has established that he suffers from some medical impairments, he has not established that his symptoms are severe enough to warrant a period of disability, disability insurance benefits, or Supplemental Security Income. The ALJ did not err in his evaluation of the evidence. Viewing the record as a whole, substantial evidence supports ALJ Yerian's determination that Belew is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Plaintiff Anthony W. Belew's Motion for Summary Judgment [Record No. 7] is **DENIED**.

(2)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 8] is **GRANTED**.

(3)     The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 24th day of July, 2012.



Signed By:

_Danny C. Reeves_  DCR

United States District Judge

-19-